UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VICTORIA C. PATTISON,

    Plaintiff,

v.

THE HERTZ CORPORATION WELFARE
PLAN & METROPOLITAN LIFE
INSURANCE COMPANY,

    Defendants.

Civil Action No.: 04-11408DPW

**MEMORANDUM IN SUPPORT OF PLAINTIFF=S MOTION FOR
LIMITED PRE-TRIAL DISCOVERY AND TO
<u>CLARIFY THE PARAMETERS OF THE JUDICIAL RECORD</u>**

**INTRODUCTION**

Pursuant to Fed.R.Civ.P. 7(b), and the parties= Joint Statement of Proposed Pre-Trial Schedule, the Plaintiff, Victoria C. Pattison, files this Motion for Limited Pre-Trial Discovery and to Clarify the Parameters of the Record for Judicial Review[1]. The purpose of this Motion is to discover:

    1. Metropolitan Life Insurance Company's ("MetLife") internal guidelines and training materials (collectively referred to "Internal Guidelines") regarding the interpretation and application of The Hertz Corporation Welfare Benefit Plan ("Plan"), Summary Plan Description ("SPD") and Policy at issue, as they should have been disclosed during the appeals process and are necessarily part of the record before the Court; and

    2. Whether MetLife's decision to terminate Ms. Pattison's benefits was tainted by a conflict of

---

[1] The parties' Joint Statement requires the Plaintiff to file separate motions explaining why she believes the administrative record is incomplete and a motion for discovery. In an effort to consolidate the issues before the Court, the Plaintiff has filed one motion combining both issues.

interest as it relates to its reviewing physicians.

## SUMMARY OF THE RELEVANT FACTS AND LAW

Pending before this Court is the Plaintiff=s claim that the Defendant improperly terminated her LTD benefits under ERISA, 29 U.S.C.' 1132(a)(1)(B), despite the uncontroverted medical evidence establishing her total disability as a result of the debilitating symptoms of Multiple Sclerosis (AMS@). The Plan in question is insured and administered by MetLife.

Denial of benefit cases are generally reviewed by district courts under a *de novo* standard of review, unless the terms of the Plan contain explicit language granting the insurer discretion to interpret the terms of the plan and the facts of the case.[2]  *See e.g.*, *Brigham* v. *Sun Life*, 317 F.3d 72 (1st Cir. 2003). The record for review by the court is generally limited to the information before the insurer when it made the decision to deny benefits.  *Cook* v. *Liberty Life Assurance Company of America*, 320 F.3d 11, 18 (1st Cir. 2003).  The question of what constitutes the judicial record, however, has never been equivocally resolved by the First Circuit, and is at issue in the current Motion.

On January 31, 2005, MetLife served upon the Plaintiff, its claimed record in this case (AProposed Record@).  Pursuant to the parties' Scheduling Order, the Plaintiff notified MetLife on February 14, 2005, of her belief that its Proposed Record was incomplete. (*See* Exhibit A.)  On February 23, 2005, the Plaintiff served on MetLife four interrogatories addressing the relationship between MetLife and its reviewing physicians. (*See* Exhibit B.) These interrogatories were propounded pursuant to the agreement

---

[2]The parties have not determined to date the appropriate standard of review in this matter. Although the Plaintiff alleges that the proper standard of review should be *de novo*, she has argued this Motion as though the proper standard of review was discretionary.  The Plaintiff=s argument in this regard does not waive her right to claim at future date that the applicable standard of review is *de novo.*

of this Court during the Scheduling Conference in this matter. On March 10, 2005, Ms. Pattison wrote MetLife regarding the Proposed Record. The Plaintiff included in this letter a detailed discussion as to why the record was incomplete without the Internal Guidelines and MetLife's responses to the Plaintiff's Interrogatories. (*See* Exhibit C, without exhibits.) MetLife has not formally indicated whether it will respond to the Plaintiff's interrogatories, or whether it will disclose the Internal Guidelines for inclusion in the Record for Judicial Review.

### NATURE OF THE PLAINTIFF=S DISCOVERY REQUEST

The Plaintiff is seeking limited discovery regarding MetLife=s review of Ms. Pattison=s claim and the basis upon which it made its decision to deny her benefits. Specifically, the Plaintiff is seeking:

(1) All Internal Guidelines that reference or interpret the provisions of the Plan, SPD and Policy at issue;

(2) All Internal Guidelines that guide MetLife employees= in the review of claims involving MS;

(3) Response to the Plaintiff's four interrogatories regarding the relationship between MetLife and its reviewing physicians.

### ARGUMENT

**I. IN MAKING DECISIONS REGARDING THE SCOPE OF THE ADMINISTRATIVE RECORD, THE COURT MAKES ITS OWN INDEPENDENT JUDGMENT.**

The First Circuit Court of Appeals has made clear the difference between the Court=s role in reviewing the merits of a claim denial under ERISA and its role in determining the proper record for review. In *Recupero* v. *New England Telephone and Telegraph Company, et. al.*, 118 F.3d 820 (1st Cir. 1997), the Court held that disputes regarding the record do not warrant the same level of deference that

merits= disputes may warrant. As the court stated:

> Deciding disputable factual issues about what is or is not properly a part of the "record" for judicial review is fundamentally different from deciding disputable factual issues going to the merits of a benefits claim. The out-of-court decision under judicial review in this case was, or at least in ordinary circumstances should have been, a decision on the merits. The standard of judicial review of that decision, in whatever way it may be phrased and described, is to some extent deferential in the sense that the reviewing court is not to set aside a factual finding of historical fact for which the record on which the decision was made contained adequate support. . . . In contrast, the trial judge's decision of a dispute about the record is typically not deferential. . . .
>
> As stated above, a trial court may take "evidence on motion" or convene a nonjury "trial" in order to develop a "record" suitable for judicial review of a challenged out-of-court decision. Also, a court may convene either of these kinds of proceedings to determine whether the "record" on which the out-of-court decision was made is complete and, if not, what supplementation is appropriate.

*Recupero*, 118 F.3d at 830.

Accordingly, this Court should make an independent judgment regarding the motion for limited discovery and the record for review by the Court.

II. **THE PLAINTIFF IS ENTITLED TO THE REQUESTED DISCOVERY AS (A) THE FEDERAL RULES OF CIVIL PROCEDURE PERMIT EXPANSIVE DISCOVERY; (B) ERISA DOES NOT PRECLUDE DISCOVERY; AND (C) THE COURT HAS INDEPENDENT AUTHORITY TO PERMIT DISCOVERY.**

   A. **The Federal Rules of Civil Procedure Permit Discovery Regarding Matters Relevant To The Pending Action.**

The Plaintiff=s request for the limited discovery should be allowed as it is relevant to the pending action. As a preliminary matter, the Federal Rules of Civil Procedure favor discovery under these circumstances. *See generally*, Fed.R.Civ.P. 26; Advisory Committee Notes to Fed.R.Civ.P. 26(b) (West 1999). The scope of discovery encompasses Aany matter, not privileged, which is relevant to the subject matter involved in the pending action . . . [and which] appears reasonably calculated to lead to the discovery

of admissible evidence. Fed.R.Civ.P. 26(b)(1). The discovery requested above is relevant to the current action, and is essential to: (1) establish the parameters of the administrative record; (2) permit meaningful judicial review of the current action.

### B. ERISA Does Not Preclude Discovery.

ERISA is devoid of language prohibiting discovery in benefit denial cases. *See generally*, 29 U.S.C. ' 1001, *et. seq*. To the contrary, ERISA=s language and its implementing regulations reflect the intent of both Congress and the United States Department of Labor to require fiduciaries to disclose to beneficiaries, during the appeal process, the basis of its decisions and any documents it *may or may not have* relied upon in making that decision. *See e.g.* 29 U.S.C. ' 1132(c) (requiring the plan administrator to disclose the plan document and pertinent documents relied upon by the administrator in evaluating the claim within 30 days of receiving a written request and applying a $110 per day penalty on a fiduciary for failing to do so); 29 C.F.R. ' 2560.503-1(g)(1)(v)(A) (requiring plan administrator to provide written notification if Aan internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination@ and requiring the disclosure of such information upon request); 29 CFR 2560.503-1(h)(2)(iii) (requiring as part of a full and fair review of a benefit denial, disclosure of all documents Arelevant@ to a beneficiaries claim for benefits; a document is Arelevant@ as defined in section (m)(8)(ii) if, *inter alia,* it A[w]as submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination)[3]. Thus, a record is incomplete if it does not contain the claims manual, training

---

[3]Section 29 C.F.R ' 2560.503-1(m)(8)(iv) further requires that documents relevant to a claimants= appeal include: AIn the case of a group health plan or plan providing disability benefits, constitutes a statement

manual, and guidelines that are used to instruct the insurance company=s claim handlers.

### C. The Court Has Clear Authority To Permit Discovery As To The Information Available To The Defendant At The Time It Made The Decision To Deny Ms. Pattison=s Benefits.

By this Motion, the Plaintiff is simply attempting to ascertain all the relevant information available to and utilized by MetLife in making its determination to deny Ms. Pattison=s benefits. Such discovery in ERISA cases is not without precedent in this Circuit, and others. For example, the First Circuit held in *Liston* v. *Unum Corp. Officer Severance Plan*, 300 F.3d 19 (1st Cir. 2003):

> Whether discovery was warranted depends in part on if and in what respect it matters whether others were better treated than Liston, and this is not a question that has a neat mechanical answer. Liston's suit is for benefits that Liston says were promised to her by the plan, not a discrimination case, so the central issue must always be what the plan promised to Liston and whether the plan delivered. Nevertheless, how others were treated could--in some cases--be substantively relevant to the question whether the administrator's construction and application of the plan to Liston was reasonable.

*Liston*, 300 F.3d at 25. (Citations omitted.)

The Magistrate Judge permitted discovery, including depositions of claim handlers, in *Liston*, a decision that was affirmed by the District Court. Prior to *Liston*, several courts in this Circuit have permitted discovery into information of the nature Ms. Pattison requests in the current Motion. *See e.g.*, *Doe* v. *Travelers Insurance Company*, 167 F.3d 53, 57 (1st Cir. 1999),[4] *Cannon* v. *Unum Life Insurance Company of America*, 2004 U.S.Dist.LEXIS 835 (Jan. 23, 2004) ("Obviously, if Unum has

---

of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant=s diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.@

[4] Judge Robert E. Keeton, who presided over the district court case in *Doe*, permitted discovery between the parties. This discovery included the disclosure of the guidelines under which Travelers evaluated Ms. Doe=s claim for benefits. *Id.*, at 56, 59; *Doe v. Travelers*, 971 F. Supp. 623, 639-40.

internal memoranda or policies that instruct claim handlers how to apply the mental illness limitation, such materials are relevant to the question of whether Unum acted arbitrarily and capriciously in connection with its denial of Cannon=s claim"); *Ardolino v. Metropolitan Life Insurance Company,* 2001 U.S. Dist. LEXIS 14318 (D. Mass. July 2, 2001) (permitting discovery regarding the parameters of the administrative record and whether or not the fiduciary acted arbitrarily and capriciously with respect to the participant=s claim); *Tinkham* v. *Connecticut General Life Insurance Company*, 2000 WL 761802 (D.Me. April 18, 2000) (permitting limited discovery on the insurer=s underwriting guidelines applicable to claims based on the ailments which formed the basis of the plaintiff=s application for LTD benefits in an abuse of discretion as "the defendant should not be able to avoid judicial review by willful blindness to its own established policies and procedures.")

### III.   THE RECORD IS INCOMPLETE WITHOUT METLIFE'S INTERNAL GUIDELINES.

In August 2004, the First Circuit held in *Glista v. Unum Life Insurance Company*, 378 F.3d 113, 122-123 (1st Cir. 2004):

> The weight and admissibility of internal documents, whether those documents are offered in support of the interpretation of the plan administrator or that of the claimant, will vary with the facts of each case. *See Doe v. Travelers Ins. Co.,* 167 F.3d 53, 57 (1st Cir.1999). Such documents are most likely to be relevant where they have been authenticated, have been generated or adopted by the plan administrator, concern the policy in question, are timely to the issue in the case, are consistently used, and were known or should have been known by those who made the decision to deny the claim. Where a plan administrator has chosen consistently to interpret plan terms in a given way, that interpretation is relevant in assessing the reasonableness of the administrator's decision. The Department of Labor regulations state that claims procedures "will be deemed reasonable only if" they ensure that "plan provisions [are] applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). . . .
>
> There is nothing uncommon about reviewing courts considering such internal memoranda containing ERISA interpretations. For example, in *Doe,* this court considered internal

> guidelines upon which Travelers, the plan administrator, had relied in applying the mental health provisions of its plan. 167 F.3d at 59. We ultimately found the administrator's denial of benefits unreasonable, in part because that denial conflicted with Travelers' own guidelines. . . .

*Glista*, 378 F.3d at 122-123. *See also*, *Doe, supra*, *Cannon, supra*.

Similarly, several courts have permitted discovery into MetLife's Internal Guidelines, including Judge Stearns in *Martin v. Polaroid Corporation Long Term Disability Plan*, C.A. 03-11507. (*See* Exhibit D.) In addition, on November 5, 2004, the court in *Palmiotti v. Metropolitan Life Insurance Company*, United States District Court for the District of New York, C.A. 04-0718 (*See* Exhibit E) ruled that discovery as to MetLife's internal guidelines and its review of the plaintiff's claim was proper. On March 9, 2005, that same court denied MetLife's motion for a protective order for its internal guidelines. 2005 WL 552017 (S.D.N.Y. March 9, 2005). *See also*, *Cohen v. Metropolitan Life Insurance Company*, 2003 WL 1563349 (S.D.N.Y. December 4, 2003) (where the court permitted discovery into MetLife=s ABest Practices Manual@ and MetLife=s Claim Management Guidelines.@)

Ms. Pattison is seeking all internal guidelines that were "generated or adopted by [Metlife], concern [Ms. Pattison's Policy], are timely to [Ms. Pattison's disability and the interpretation of the provisions of Ms. Pattison's Policy], are consistently used, and were known or should have been known by those who made the decision to deny [her] claim." Under *Glista*, these documents are relevant to the Court's determination as to whether MetLife's review of Ms. Pattison's claim was reasonable, under any standard of review.

**IV.    THE REQUESTED DISCOVERY IS ESSENTIAL TO DETERMINE WHETHER METLIFE=S DECISION TO TERMINATE MS. PATTISON=S BENEFITS WAS REASONABLE.**

**A.    Introduction: The Controlling Issue Is Whether MetLife=s Decision to Terminate Ms. Pattison=s Benefits Was Reasonable.**

In reviewing the denial of an insurer for whom a financial conflict of interest may exist (i.e., the insurer is both funds and pays benefits under the plan), the First Circuit advised that District Courts must take Ainto account the potential for conflict in considering whether the insurer=s decision had strayed outside the bounds of reasonableness to become an abuse of discretion.@ *Pari-Fasano* v. *ITT Hartford Life and Accident Company*, 230 F.3d 415, 419 (1st Cir. 2000). MetLife=s decision to terminate Ms. Pattison=s claim Astrayed outside the bounds of reasonableness to become an abuse of discretion@ in part due to its reliance on the medical reviews of Drs. Robert Porter and Amy Hopkins to justify its decision.

**B.    MetLife=s Relationship with Network Medical Review and Dr. Hopkins**

**1.    Network Medical Review**

Network Medical Review ("NMR") has been found by several courts to be biased in its review of claimants' records. *See e.g.*, *Austin v. Continental Casualty Company*, 216 F.Supp.2d 550 (W.D.N.C. August 23, 2002); *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516 (6th Cir. 2002)(criticizing NMR's findings and indicating that Fortis had a clear incentive to contract with a company whose medical experts were inclined to find in its favor); *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130, 1143 (9th Cir. 2001) vacated on other grounds (expressing concern over an insurer repeatedly hiring the same physicians as experts.). In particular, in *Austin*, the court held:

> Defendant asserts in its brief that the vocational and medical experts it hired were "independent"; however, review of the web sites maintained by the companies providing

> such experts tend to indicate that they are for hire by employers for purposes of reducing costs. . . .
>
> And the Network Medical Review Company, the source for the reviewing physician, states in its internet materials:
>
> NMR's specialty physicians provide an understandable explanation of how the history, physical examination and testing *support the retained functional abilities of an individual.* The Evidence-Based Medical Reports will emphasize the relationship between pathology, impairment and the ability to work and the assessment will be supported by the best evidence from clinical and health-care research, including articles from medical literature, medical text, specialty college publications and other scientifically validated information.

(Emphasis added.) *Austin*, at 554, n.1. Thus, it is clear that the sources of referral in this case indicate that they are not as "independent" as MetLife asserted during the internal appeal.

There are approximately fifty-four published disability insurance cases where NMR conducted reviews. In virtually every case, the NMR physician involved found that the plaintiff was not disabled. (*See* Exhibit F.) The Defendant may argue that in the majority of the cases referenced above, the court found the insurer's review to be reasonable, and not an abuse of discretion. This is true of the majority of ERISA disability cases as the abuse of discretion standard of review is a particularly insurmountable burden. However, the Plaintiff is not currently asking this Court to find MetLife's decision without merit as a result of NMR's involvement, but is simply requesting discovery as to MetLife's relationship with NMR, and Dr. Porter, in particular.

      **2.**     **Dr. Amy Hopkins**

On September 10, 2004, MetLife responded to interrogatories propounded by the Plaintiff in *Wright v. Metropolitan Life Insurance Company*, 3:04-0327, indicating that Dr. Hopkins has reviewed four to five hundred files a year for MetLife since 1999. (*See* Exhibit G.) Dr. Hopkins has also appeared

in a number of MetLife ERISA cases, including most recently *May v. Metropolitan Life Insur.Co.,* 2004 Wl 2011460 (N.D.Cal., Sept. 9, 2004), where her review of the plaintiff's records was criticized by the court. *See also*, *Bergquist v. Aetna*, 289 F.Supp.2d 400 (S.D.N.Y. 2003); *Klecher v. Metropolitan Life Ins. Co.*, 2003 WL 21314033 (S.D.N.Y. June 6, 2003). In light of Dr. Hopkins' relationship with MetLife, the Plaintiff is requesting the opportunity to inquire in the confines of this case, the number of file reviews conducted by Dr. Hopkins and the amount paid to her by MetLife since 2000.

### C. Numerous Courts Have Permitted Discovery Into MetLife=s Relationship With Its External Reviewers.

During the Scheduling Conference in this matter, this Court, before permitting the Plaintiff to submit interrogatories to the Defendant, asked the Plaintiff whether discovery of issues raised by the Plaintiff had been previously permitted in ERISA cases. The Plaintiff responded with several cases; these cases, in addition to several others are detailed below.

- On March 1, 2005, in *Clark v. Metropolitan Life Insurance Company*, United States District Court for the Central District of California, C.A. 04-1236, the Court ordered that discovery was permissible, in relevant part, as to the following categories:

    1. The number of times that Defendants have utilized the services of medical reviewer(s) who reviewed Plaintiff's claim for Defendants,
    2. The amounts Defendants pain to the medical reviewer(s) who reviewed Plaintiff's claim, and the amounts paid to those medical reviewer(s) in the three (3) years preceding the review of Plaintiff's claim,
    3. In the event the medical reviewers were subcontracted by another agency working on MetLife's behalf, the amounts paid by MetLife to the subcontracting company in the three (3) years preceding the review of Plaintiff's claim . . .

(*See* Exhibit H.) The medical reviewers in the *Clark* case are NMR employees.

- In *Wright v. Metropolitan Life Insurance Company*, United States District Court for the Middle District of Tennessee, C.A. No. 3:04-0327 (December 6, 2004), the court

permitted the plaintiff discovery as to the relationship between MetLife, Elite Physicians, NMR and Amy Hopkins, M.D. (*See e.g.,* Exhibit I.) MetLife's interrogatory responses in *Wright* are attached at Exhibit G.

- The court in *Winkler v. Metropolitan Life Insurance Company*, United States District Court for the Southern District of New York, C.A. 03-9656 (SAS) (July 30, 2004) permitted discovery as to the relationship between MetLife and NMR. A copy of the oral argument transcript and MetLife's response to the Court's Order is attached at Exhibits J & K, respectively.

- In *Desai v. Fortis Benefits Insurance Company,* United States District Court for the Northern District of Georgia, C.A. 03-01529, the court issued a discovery order permitting the plaintiff to inquire directly into NMR's financial situation and its relationship with several insurers, including MetLife. The plaintiff was also permitted to take the deposition of Dr. Porter. Unfortunately, Dr. Porter's deposition transcript and the documents disclosed by NMR are currently under seal. Rather than attach the 70 page order in *Desai*, the Plaintiff has attached at Exhibit L, a copy of the Civil Docket Sheet in the matter. (*See* Exhibit L, Docket Numbers 64, 79, 81

- In *Blessing v. Metropolitan Life Ins. Co*., United States District Court for the Middle District of Tennessee, on March 7, 2005, granted the plaintiff's motion for discovery in a disability case against MetLife. The order states that "discovery is to be strictly circumscribed to obtain potential evidence concerning the identified procedural challenges." One of the two challenges raised by the plaintiff was "pervasive and undisclosed conflicts," which included discovery as to MetLife's two reviewers, Drs. Kenneth Busch and Mark Moyer. As the Order is not currently available at this time, the Plaintiff has attached the Civil Docket Sheet in *Blessing* for the Court's review. (*See* Exhibit M, Docket Number 34.)

- In *Ladd v. ITT Industries Inc.*, 1997 WL 769460 (N.D.Ill. Dec. 9, 1997), the court permitted the plaintiff to propound interrogatories "designed to induce production of information to substantiate an argument that MetLife's independent medical reviewer, Network Medical Review, was biased and prejudiced." *Ladd*, at *1. Although the District Court in Ladd found for the insurer, the Seventh Circuit reversed and ordered that judgment be entered for the plaintiff. *Ladd v. ITT Corp*., 148 F.3d 753 (7th Cir. 1998).

- In *Ewing v. B.F. Goodrich Aerospace Aerostructures Group & Metropolitan Life Ins. Co.,* United States District Court for the Southern District of Alabama, C.A. 03-017, the court permitted the plaintiff to take Dr. Hopkins' deposition as well as to propound full discovery on MetLife. (*See* Exhibit N.)

Thus, it is clear that the requested discovery as to the relationship between MetLife and its external reviewers, Drs. Porter and Hopkins is not a mere Afishing expedition.@ The Plaintiff has a reasonable basis to allege that Drs. Porter and Hopkins are biased in their decision-making. Evidence is available that shows that the discovery requested would tend to be productive and would produce evidence material the determination as to whether MetLife's decision to terminate Ms. Pattison's benefits was reasonable.

V.   **GRANTING LIMITED DISCOVERY DOES NOT CONTRAVENE THE GOALS OF ERISA TO STREAMLINE JUDICIAL REVIEW OF BENEFIT DENIALS.**

The Defendant may argue that unbridled discovery may interfere with the goal of ERISA in streamlining judicial review of a benefit denial. In particular, MetLife may argue that discovery contravenes the goals of achieving prompt and inexpensive resolution of disputes under ERISA. While it is true that unbridled discovery aimed at re-litigating the underlying benefit denial may contravene these goals, this is simply not what Ms. Pattison is requesting in this case.

First, the Plaintiff=s discovery is well-defined and limited in nature. It is geared toward discovering material that is easily accessible to MetLife, and which it has produced before in several different matters. In this way, the Plaintiff=s requests meet the parameters established by *Liston*, *supra*.

Second, the Court has ample power under existing case law and under the Federal Rules of Civil Procedure, to balance the Plaintiff=s need for discovery and meaningful judicial review against MetLife=s interests in prompt closure of the dispute in keeping with ERISA=s overall policy. As the court stated in *Nagele*:

> Given the potential for a growing caseload of claims seeking review of ERISA covered benefit denials, there may be an understandable motivation to restrict discovery as a means of accelerating disposition of these cases. But judicial review without a complete and accurate record is in no one=s interest and making mistakes quickly does not comport with

the meaningful judicial review Congress undoubtedly had in mind. This is particularly the case where such denials involve loss of benefits needed to cover medical treatment posing major economic burdens, well beyond the capacity of the affected individuals.

*Nagele*, 193 F.R.D. at 107.

ERISA requires that an ERISA fiduciary Ashall discharge his duties . . . solely in the interest of the participants and beneficiaries . . .@ 29 U.S.C. ' 1104(a)(1)(b). Through this request, the Plaintiff is merely asking for the right to determine whether or not the Defendant breached this fiduciary duty.

## CONCLUSION

For the reasons stated above, the Plaintiff respectfully requests that the Court permit her to engage in limited pre-trial discovery and to expand the administrative record accordingly.

Dated: March 14, 2005                                          Respectfully submitted,

/s/ Mala M. Rafik
S. Stephen Rosenfeld (BBO No. 428940)
Mala M. Rafik (BBO No. 638075)
ROSENFELD & RAFIK, P.C.
44 School Street, Suite 410
Boston, MA 02108
(617) 723-7470

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 14th day of March, 2005, one copy of the above document was delivered via electronic mail, to counsel for the Defendants.

/s/ Mala M. Rafik
Mala M. Rafik, Esq.