# EXHIBIT C

**ROSENFELD & RAFIK**
A PROFESSIONAL CORPORATION

44 SCHOOL STREET
SUITE 410
BOSTON, MASSACHUSETTS 02108

S. STEPHEN ROSENFELD
MALA M. RAFIK

TEL. (617) 723-7470
FAX (617) 227-2843
WWW.ROSENFELD.COM

March 10, 2005

**BY HAND**

Constance M. McGrane, Esq.
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Counselors at Law
Ten Post Office Square
Boston, MA  02109

      Re:    *Victoria C. Pattison v. The Hertz Corporation Welfare Plan, et. al.*
              *Civil Action No.: 04-11408DPW*

Dear Connie:

    Pursuant to our recent discussions, I have enclosed an organized version of the Record for Judicial Review in the above-referenced matter.  I eliminated the majority of duplicates, and divided the documents into the following categories:

1. Plan documents;
2. Social Security Disability documents;
3. Claim for Benefits;
4. South Shore Hospital Medical Records – May 2002;
5. Paul S. Blachman, M.D. Medical Reports;
6. Howard Weiner, M.D. Medical Report;
7. Paul M. Blatchford Vocational Report;
8. MetLife Referral Forms;
9. MetLife Medical Reviews;
10. Correspondence - MetLife and Paul S. Blachman, M.D.
11. Correspondence - MetLife and Victoria Pattison; and
12. MetLife Diary Review Report (Incomplete).

In preparing the record, I realized that the following documents were missing:

1. A complete copy of MetLife's Diary Review Report;
2. MetLife's Social Security Questions and Answers document sent to Ms. Pattison upon the approval of her claim; and
3. Correspondence between Hertz Corporation and Ms. Pattison.

Constance M. McGrane, Esq.
March 10, 2005
Page 2

As a result, I enclosed for your review, a copy of the documents referenced in numbers 2 and 3. I will look to you for a complete copy of MetLife's Diary Review Report.

Finally, it is the Plaintiff's position that the Record is incomplete without the responses to its Interrogatories to the Defendant as well as any training materials, administrative guidelines, claims manuals, or other materials regarding the interpretation and administration of the Plan at issue. During our discussion regarding the Plaintiff's position regarding discovery, I agreed to forward you any discovery orders in my possession pertaining to MetLife and Network Medical Review ("NMR") as well as judicial authority for the inclusion of internal guidelines in the Record. My responses are below.

*Recent Discovery Orders Pertaining to MetLife and its Relationship with its External Reviewers*

As we discussed, the following are recent decisions supporting the Plaintiff's interrogatories regarding MetLife's relationship with Drs. Porter and Hopkins.

- On March 1, 2005 in *Clark v. Metropolitan Life Insurance Company*, et. al., EDCV04-1236 (VAP), the Court ordered that discovery was permissible, in relevant part, as to the following categories

    1. The number of times that Defendants have utilized the services of medical reviewer(s) who reviewed Plaintiff's claim for Defendants,
    2. The amounts Defendants pain to the medical reviewer(s) who reviewed Plaintiff's claim, and the amounts paid to those medical reviewer(s) in the three (3) years preceding the review of Plaintiff's claim,
    3. In the event the medical reviewers were subcontracted by another agency working on MetLife's behalf, the amounts paid by MetLife to the subcontracting company in the three (3) years preceding the review of Plaintiff's claim . . .

(*See* Exhibit 1.)

The medical reviewers in the *Clark* case are NMR employees.

- In *Wright v. Metropolitan Life Insurance Company*, No. 3:04-0327 (December 6, 2004), the court permitted the plaintiff discovery as to the relationship between MetLife, Elite Physicians, NMR and Amy Hopkins, M.D. (*See* Exhibit 2.) MetLife's interrogatory responses in Wright are attached at Exhibit 3.

Constance M. McGrane, Esq.
March 10, 2005
Page 3

- The court in *Winklet v. Metropolitan Life Insurance Company*, 03 CV 9656 (SAS) (July 30, 2004) permitted discovery as to the relationship between MetLife and NMR. A copy of the oral argument transcript and MetLife's response to the Court's Order is attached at Exhibits 4 & 5, respectively.

- In *Desai v. Fortis Benefits Insurance Company,* the Court issued a discovery order permitting the plaintiff to inquire directly into NMR's financial situation and its relationship with several insurers, including MetLife. The plaintiff was also permitted to take the deposition of Dr. Robert Porter. Unfortunately, Dr. Porter's deposition transcript and the documents disclosed by NMR are currently under seal.

- Just this week, Judge Campbell in the Middle District of Tennessee granted the plaintiff's motion for discovery in a disability case against MetLife. The order states that "discovery is to be strictly circumscribed to obtain potential evidence concerning the identified procedural challenges." One of the two challenges raised by the plaintiff was "pervasive and undisclosed conflicts," which included discovery as to Metlife's two reviewers, Drs. Kenneth Busch and Mark Moyer.

- In *Ladd v. ITT Industries Inc.*, 1997 WL 769460 (N.D.Ill. Dec. 9, 1997), the court permitted the plaintiff to propound interrogatories "designed to induce production of information to substantiate an argument that MetLife's independent medical reviewer, Network Medical Review, was biased and prejudiced." *Ladd*, at *1.

Thus, it is clear that discovery as to the relationship between MetLife and its external reviewers is not without precedent.

*Internal Guidelines*

I requested in both my Incomplete Record Notification and during our conversation regarding the Record that MetLife disclose any and all internal guidelines relating to its handling of Ms. Pattison's claim as these documents are necessarily part of the Record in this matter. Initially, you indicated that you were unsure as to whether such documents existed. In response, I directed you to *Martin v. Polaroid Corporation Long Term Disability Plan (cite)*, in which Judge Stearns referenced MetLife's Claim Management Guidelines, which were disclosed to the plaintiff under a confidentiality order. However, the court in *Palmiotti v. Metropolitan Life Insurance Company of America*, 04 Civ. 0718 (March 9, 2005) ruled yesterday that MetLife's Claim Management Guidelines were not subject to a confidentiality order, stating in relevant part:

> In any event, no protective order is warranted because federal regulations require

Constance M. McGrane, Esq.
March 10, 2005
Page 4

>the broad disclosure of the information that MetLife seeks to keep confidential. In order to satisfy statutory requirements to provide a fair claims procedure, an employee benefits program must provide to a claimant upon request "all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). The regulations go to define as relevant any document that "[d]emonstrates compliance with the administrative process and safeguard required pursuant to paragraph (b) (5) of this section in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8)(iii). And paragraph (b)(5) requires that "[t]he claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. 29 C.F.R. § 2560.503-1(b)(5). In short, the adequacy of claims processing procedures is relevant to whether the denial of a claim is arbitrary and capricious, and, because the procedures are relevant, claimants are entitled to have access to them. Under these circumstances, the Claims Manual is required to be made widely available outside MeLife; the company's efforts to maintain secrecy are necessarily futile; and the claim of competitive harm is negated because each of MetLife's competitors is subject to the same regulations.

*Palmiotto*, at pages 3-4. (*See* Exhibit 6.)

Similarly, I understand that MetLife has a Claims Management Guide, which is referred to as the CMG. It is a compilation of procedures governing a wide range of claim handling issues. Finally, I understand that MetLife maintains a document entitled Procedures and Policy for Processing Claims. While I do not know the specific name of MetLife's training materials regarding the processing of long-term disability claims, or whether specific guidelines exist regarding the processing of claims based on Multiple Sclerosis these guidelines and training materials should be part of the Record before the Court. *See Glista v. Unum Life Insurance Company*, 378 F.3d 113, 122-123 (1st Cir. 2004) (". . . what is sought to be admitted are the plan administrator's own documents interpreting the language of the Plan and providing the standard for evaluation of the facts presented. The documents here are more analogous to an administrative agency's guidelines or regulations, which are routinely considered in evaluating whether the agency's actions were arbitrary or capricious. The documents here shed light on the "legal" rule the Plan applies, not the underlying facts presented to the Administrator.")

In our conversation, I directed you to *Glista v. Unum Life Insurance Company*, *supra*, where the First Circuit held:

>The weight and admissibility of internal documents, whether those documents are

Constance M. McGrane, Esq.
March 10, 2005
Page 5

offered in support of the interpretation of the plan administrator or that of the claimant, will vary with the facts of each case. *See Doe v. Travelers Ins. Co.,* 167 F.3d 53, 57 (1st Cir.1999). Such documents are most likely to be relevant where they have been authenticated, have been generated or adopted by the plan administrator, concern the policy in question, are timely to the issue in the case, are consistently used, and were known or should have been known by those who made the decision to deny the claim. Where a plan administrator has chosen consistently to interpret plan terms in a given way, that interpretation is relevant in assessing the reasonableness of the administrator's decision. The Department of Labor regulations state that claims procedures "will be deemed reasonable only if" they ensure that "plan provisions [are] applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5).

Contrary to Unum's arguments, we do not see a court's consideration of internal memoranda as impermissibly narrowing the discretion of plan administrators. By creating and promulgating internal guidance documents, plan administrators choose to exercise their discretion to define terms. When courts place weight on those definitions, they do not narrow the plan administrator's discretion beyond what the administrator itself has chosen to do.

There is nothing uncommon about reviewing courts considering such internal memoranda containing ERISA interpretations. For example, in *Doe,* this court considered internal guidelines upon which Travelers, the plan administrator, had relied in applying the mental health provisions of its plan. 167 F.3d at 59. We ultimately found the administrator's denial of benefits unreasonable, in part because that denial conflicted with Travelers' own guidelines. *Id.* Similarly, in *Egert v. Conn. Gen. Life Ins. Co.,* 900 F.2d 1032 (7th Cir.1990), the Court of Appeals for the Seventh Circuit relied on an internal memorandum in finding arbitrary and capricious the plan administrator's denial of a claim for in vitro fertilization on the ground that the plan authorized reimbursement only for the treatment of an "illness" and infertility was not an illness. Although the court found that "illness" could be credibly interpreted either to include or to exclude infertility, *id.* at 1037, it held that the denial was arbitrary and capricious because "Connecticut General ha[d] described infertility as an 'illness' in its own internal guidelines," *id.* at 1038, which "outline[d] appropriate applications of the Plan to individual circumstances," *id.* at 1034. [FN4] The court stressed the importance of "uniformity of construction" when evaluating whether an action was arbitrary and capricious. *Id.* at 1037 (quoting *Reilly v. Blue Cross & Blue Shield United of Wisc.,* 846 F.2d 416, 420 (7th Cir.1988), which cites *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 318 (5th Cir.1982)).

Constance M. McGrane, Esq.
March 10, 2005
Page 6

*Glista*, at 123-124.

    Ms. Pattison is seeking all internal guidelines that were "generated or adopted by [Metlife], concern [Ms. Pattison's Policy], are timely to [Ms. Pattison's disability and the interpretation of the provisions of Ms. Pattison's Policy], are consistently used, and were known or should have been known by those who made the decision to deny [her] claim." Under *Glista*, these documents are relevant to the Court's determination as to whether MetLife's review of Ms. Pattison's claim was reasonable, under any standard of review.

    Thank you. I look forward to hearing from you.

                                       Sincerely,

                                       Mala M. Rafik

cc: Victoria C. Pattison
      Daniel J. Blake, Esq.