# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-11507-RGS

RICHARD MARTIN

v.

POLAROID CORPORATION
LONG TERM DISABILITY PLAN

MEMORANDUM OF DECISION
AND ORDER TO REMAND

May 27, 2004

STEARNS, D.J.

This case presents a very close question, even under the applicable, highly deferential, arbitrary and capricious standard of review. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1988). Before entering a final decision, the court believes that a remand for a limited purpose is dictated by reasons of fairness.

Briefly stated, claimant Richard Martin left his employment as a "customer fulfillment manager" at Polaroid Corporation on August 24, 2001, after being diagnosed by his treating physician as suffering from fibromyalgia.[1] Martin's neurologist, his psychiatrist, an independent psychiatrist and a physician employed by the Social Security Administration,[2]

---

[1] Fibromyalgia has achieved clinical acceptance as a recognized medical syndrome only in the last decade. While there is no consensus as to the cause of its many symptoms, current medical thinking suggests (that in addition to psychological or psychiatric factors), a chemical imbalance may cause nerve cells in the spinal cord and brain to become oversensitized, or that an imbalance of brain chemicals may alter mood and lower a patient's threshold for pain, or that hormonal deficiencies may result in similar mood changes.

[2] Martin's application for Social Security disability benefits was ultimately approved.

and an independent orthopedic surgeon hired by Polaroid, agreed with the treating physician's diagnosis. All of the physicians were of the opinion that Martin was disabled, and all but the orthopedic surgeon were of the opinion that the severity of his disability prevented him from working. (The orthopedic surgeon thought that despite Martin's inability to continue in his job at Polaroid, he could still do sedentary work).

Metropolitan Life Insurance Company (MetLife), the administrator of the Polaroid Corporation Long Term Disability Plan (Plan), denied Martin's claim based mainly on the opinions of two independent non-examining physicians, Dr. Hopkins, an internist, and Dr. Schroeder, a psychiatrist, each of whom, after reviewing the available records, concluded that there was insufficient evidence in Martin's treatment notes to support the opinions of the other medical specialists.[3] At the hearing on Martin's motion for judgment on the administrative record and Polaroid's cross-motion for summary judgment, it became apparent that neither Dr. Hopkins nor Dr. Schroeder had the benefit of the full medical record.

How this came about is explained as follows. In applying for long-term disability benefits, Martin was asked to complete or submit a number of forms, including a statement from his attending physician. He was not, however, asked to provide his full medical record. Rather, he was told that he was required "to provide signed authorization for us to obtain and release medical and financial information, and any other items we may reasonably require in support of your Disability." After being told by MetLife in its initial

---

[3]MetLife also cited the orthopedic surgeon's opinion regarding Martin's capacity to perform sedentary work. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 186 (1st Cir. 1998) (the capacity to work part-time supports a finding that a claimant is not "totally disabled from any occupation.").

2

denial of his claim that the medical records he had submitted were insufficient, Martin supplied some additional information, but as his counsel[4] informed the court at the hearing, the material still did not include a full set of his doctors' treatment notes.

While it is true, as MetLife argues, that a claimant bears the burden of proving disability (that is, MetLife has no burden to prove that a claimant is _not_ disabled), the claims process is not an adversarial one, but a collaborative effort on the part of the claimant and the plan administrator, the ultimate goal of which is not to trick a claimant out of benefits that he deserves because of a failure on his part to square every corner, but to achieve a result that is fair to both the claimant and the Plan. To that end, MetLife's Claim Management Guidelines provide that when its Behavioral Health Unit (BHU) becomes involved in a claim, as it did in Martin's case, a BHU specialist is "expected" to "initiate contact with the employee and their [sic] medical provider(s)," and where an interview cannot be conducted in person or by telephone, to "request . . . medical information via fax or mail from the provider." Despite notations in the BHU files questioning the sufficiency of the medical information provided, and particularly the absence of examination notes and laboratory tests, it is undisputed that a representative of the BHU never contacted Martin or his physicians.

The failure of MetLife to follow its own internal guidelines is not, as the plaintiff suggests, evidence of "bad faith" on MetLife's part, nor do the guidelines confer any legally cognizable right or duty on the parties. Doe v. Travelers Ins. Co., 167 F.3d 53, 60 (1st Cir. 1999). I cite MetLife's failure in this regard only as support for my conclusion that Martin

---

[4]Counsel on appeal is not the same lawyer who represented Martin in the administrative proceeding.

3

did not get as full and fair a review by MetLife's examiners as he deserved under the circumstances.

Let me add the following points. There is no rule that requires a plan administrator to give any special weight to the opinions of a claimant's treating physicians. In fact, the rule is to the contrary. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Nor is the plan administrator precluded from relying on the opinions of non-examining independent physicians in denying a claim. Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 216 (1st Cir. 2004). As MetLife points out in its brief, a virtually unbroken string of First Circuit decisions upholding the denials of claims "powerfully demonstrates" the considerable deference bestowed on plan administrators by the arbitrary and capricious standard. In the face of this reality, the primary obligation of a court on review, enjoined as it is from second-guessing all but the most erroneous decisions of plan administrators, is to ensure that claimants, consistent with the terms of their Plans, receive a full and fair consideration of their claims on the merits. Without any attribution of fault to MetLife or to Martin, I do not believe that such occurred in this case.

## ORDER

For the foregoing reasons, I will remand the case to MetLife for the following limited purpose. Plaintiff will provide MetLife, forthwith, a copy of his full medical record, including the treatment notes of Dr. Weiss. MetLife will provide these notes to Dr. Hopkins and Dr. Schroeder, solely for the purpose of determining, whether on examination of the full record, the opinions they expressed in their reports of August 27, 2002, remain the same, or are changed in any material respect. MetLife will within ninety (90) days of this Order, indicate to the court, whether based on Dr. Hopkins's and Dr. Schroeder's further review, its

decision to deny Martin long-term disability benefits is rescinded. If not, the court will permit Martin to supplement the record with such additional medical information as was provided to MetLife. The court stresses that it is not requiring MetLife, beyond the limited purpose identified in this Order, to reopen the administrative proceeding, nor is it inviting Martin to raise any arguments or claims that were not presented in the original proceeding.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE