**EXHIBIT J**

47U8WINC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  - - - - - - - - - - - - - - - - - - x

3  MARK WINKLER,

4              Plaintiff,

5              v.                        03 Cv. 9656 (SAS)

6  METROPOLITAN LIFE INSURANCE CO.,

7              Defendant.

8  - - - - - - - - - - - - - - - - - - x

9                                       July 30, 2004
                                        10:25 a.m.
10

11 Before:

12              HON. SHIRA A. SCHEINDLIN

13                                       District Judge

14                    APPEARANCES

15 SCOTT M. RIEMER
        Attorney for Plaintiff
16
   LESTER SCHWAB KATZ & DWYER
17      Attorneys for Defendant
   BY: ALLAN M. MARCUS

18

19

20

21

22

23

24

25

47U8WINC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MARK WINKLER,

4              Plaintiff,

5          v.                        03 Cv. 9656 (SAS)

6   METROPOLITAN LIFE INSURANCE CO.,

7              Defendant.

8   ------------------------------x

9                                    July 30, 2004
                                     10:25 a.m.
10

11  Before:

12                  HON. SHIRA A. SCHEINDLIN

13                                    District Judge

14                       APPEARANCES

15  SCOTT M. RIEMER
         Attorney for Plaintiff

16  LESTER SCHWAB KATZ & DWYER
         Attorneys for Defendant
17  BY:  ALLAN M. MARCUS

18

19

20

21

22

23

24

25

2

47U8WINC

1          (Case called)

2          THE COURT:  So you got the last decision.  And you

3   know, therefore, there is going to be a deferential standard of

4   view.

5          Given that, do you want to either try to settle this

6   case or go through with that deferential standard of review?

7          MR. RIEMER:  Your Honor, I would definitely entertain

8   settlement talks.  But, also, we haven't -- before we made the

9   motion, we had outstanding discovery issues.

10         THE COURT:  Of course, it's affected by the standard

11  of view.

12         MR. RIEMER:  I understand that.  I wanted some time to

13  pose new discovery demands and then a time frame for him to

14  reply, and we can probably work out a lot of our differences,

15  but we haven't had discovery yet.

16         THE COURT:  All right.  What I am suggesting to you,

17  when you understand the standard of review, it seems to me it's

18  generally on the administrative record.  What more do we need

19  outside the record?

20         MR. RIEMER:  It is, your Honor.  You need discovery as

21  to what constitutes the administrative record.

22         THE COURT:  Mr. Marcus, why don't you just sort of

23  produce that?

24         MR. MARCUS:  It already has been produced, your Honor.

25         MR. RIEMER:  Your Honor, MetLife doesn't have carte

47U8WINC

1  blanche to tell us what the administrative record is.

2      THE COURT:  Right.  You have what there is.  What else

3  do you think there is?

4      MR. RIEMER:  They have hired several outside

5  consultants who did medical reviews, and we don't have the

6  files.

7      THE COURT:  Were those reviews considered by the

8  administrators?

9      MR. RIEMER:  Absolutely.

10      THE COURT:  Mr. Marcus, were they?

11      MR. MARCUS:  Yes.

12      THE COURT:  Have you produced those?

13      MR. MARCUS:  Yes, they are part of the administrative

14  record.

15      THE COURT:  Folks, have you discussed this with each

16  other before you're taking my time?

17      MR. RIEMER:  I am not asking for their reports.  I am

18  asking for their files.  They have not produced their files.

19      THE COURT:  I have this funny feeling you have not

20  conversed directly with each other before bringing the dispute

21  to me.  Because every time I turn to Mr. Marcus, he says, but

22  they have that.

23      MR. RIEMER:  We were not ready to --

24      THE COURT:  I am ready.  The case is getting old.

25  It's 03 CIV.

47U8WINC

1    Why don't you go into the jury room and discuss

2  everything while I am doing a criminal arraignment.  Instead of

3  scheduling another conference, another date to discuss your

4  discovery demands, go sit in the jury room, tell him what you

5  want, see what he responds, get all organized, and come back

6  and see me.  We will make progress today, not another day.

7    MR. RIEMER:  I know, your Honor.  The demands that

8  have been filed so far you limited to issues --

9    THE COURT:  I understand.  We were trying to determine

10  the standard of review.  Now we know it's a limited standard of

11  review, namely, just the administrative record.  There is no

12  reason, since you both came down here, go into the jury room,

13  talk this through, tell me if there is a dispute left after you

14  talk.  That way you can also discuss whether you should have

15  settlement talks.

16    Didn't I refer the case to the magistrate judge?

17    MR. MARCUS:  Not yet.

18    THE COURT:  I always do.  I am surprised if I didn't

19  here, but I will do that for you to be seen immediately.  OK?

20    Immediately does not mean today, but the magistrate

21  judge will call you in.

22    MR. MARCUS:  If I may say, your Honor, Mr. Riemer has

23  already posed discovery requests, both documents and

24  interrogatories, and we responded.

25    THE COURT:  He seems to think there is more coming.

47U8WINC

1    He seems to think there is a dispute.  That's why I am

2    suggesting, go into the jury room, talk to each other for 10,

3    15 minutes.  I will be done here, I have one criminal case, and

4    then we will go over it and see what is left and talk about it.

5            In the meantime, I will fill out a referral to the

6    magistrate judge.  When do you think you will be ready to go?

7            MR. RIEMER:  For a settlement conference?

8            THE COURT:  Yes.  Do you want to do it in August?

9            MR. RIEMER:  We were actually talking about our

10   vacation plans.

11           THE COURT:  Do you want to do it in September?

12           MR. MARCUS:  Actually, I am on vacation the first part

13   of September until the 18th.

14           THE COURT:  After September 18.

15           MR. RIEMER:  Right.

16           THE COURT:  Fine.  Why don't you go use our jury room

17   for a few minutes.  Hopefully you will be able to come back

18   with more pointed disputes or differences, and we will proceed

19   from there.  OK?

20           (Recess)

21           THE COURT:  Mr. Riemer, Mr. Marcus, have you had a

22   chance to talk a little bit?

23           MR. RIEMER:  Yes, we have.

24           THE COURT:  Have you done anything at all?

25           MR. RIEMER:  We have a handful of disputes.

6

47U8WINC

1      THE COURT:  All right.  I think that's better than

2  where we were.

3      MR. RIEMER:  Your Honor, I would request that I be

4  able to make a motion for these disputes because --

5      THE COURT:  No.  Do you think I permit discovery

6  motions?  Why would I do that?  I would be inundated.  People

7  stand up, tell me the story, and I decide.  No motions.  It's

8  not going to happen.  I do not take discovery motions in civil

9  cases.  I would never get any sleep if I allowed people to

10  write discovery motions.

11      MR. RIEMER:  Can we have it referred to the magistrate

12  then?

13      THE COURT:  What's wrong with me?  Tell me the

14  problem.

15      MR. RIEMER:  I want to be able to present to you in a

16  coherent fashion the case law.

17      THE COURT:  Are you saying you're incoherent?

18      MR. RIEMER:  No.  I am saying I am not prepared at

19  this moment to give you case cites.

20      THE COURT:  Tell me what you want.

21      Please, Mr. Riemer.

22      MR. RIEMER:  I will go through what we want.

23      THE COURT:  Thank you.

24      MR. RIEMER:  There were three physicians that reviewed

25  my client's medical records on behalf of MetLife.  They don't

47U8WINC

1    work for MetLife, but MetLife won't tell me who they work for.

2    They won't give me their CVs.  They won't tell me how many

3    times in the past they were hired by MetLife.  They won't give

4    me the files that these individuals hold, and they won't give

5    me --

6              THE COURT:  Relating to your client?

7              MR. RIEMER:  Right.  And they won't give me the

8    communications that they have had with these individuals.

9              I submit that this is very relevant because their

10   determination has to be supported by substantial evidence, and

11   there is nothing in the record now that defines what the

12   qualifications of these doctors are, if any, and whether they

13   have an institutional bias.  I feel that I am entitled for

14   discovery into that.

15             THE COURT:  Your position, Mr. Marcus?

16             MR. MARCUS:  My position is the doctors' reports are

17   already in the record.

18             THE COURT:  Who are they?  They have no employer, is

19   that right?  Are they employed by anybody?

20             MR. MARCUS:  They are not employed by MetLife.

21             THE COURT:  Are they employed by anybody?  Are they

22   independent?

23             MR. MARCUS:  They are independent physicians, as far

24   as I know.

25             THE COURT:  They are in private practice around town,

47U8WINC

1    Dr. So-and-So's office, as far as you know.

2         Would you please check into that and see if they have

3    an employer?  I doubt it, but find out if they have an

4    employer.

5         CV.  Why shouldn't the CV be produced?  It's always

6    nice to know who the doctor is.  I went to this medical school

7    this year.  You should get a CV of each doctor.

8         Those are the two easy ones.

9         He also wants to know how often they are used by

10   MetLife.  Do you know the answer, whether they are routinely

11   consulted, in other words, MetLife has a list of 100 physicians

12   that they send out?

13        MR. MARCUS:  I am not certain.  I believe they have

14   been consulted on other occasions, but I don't know the extent.

15        THE COURT:  Could you look into that, please, and find

16   out if that's all they do?  Is their entire practice a matter

17   of consulting with MetLife, or they just do that on 10 percent

18   of the time or 5 percent of the time?  Do they consult with

19   other insurance companies?  Do they have a full-time practice

20   and do this on the side?  I think that's a fair question.

21        Finally, the last one, what is this thing about

22   MetLife's communications with them?  What does that mean?

23        MR. RIEMER:  I would like to know, there is evidently

24   an individual at MetLife who sends the files out to them and

25   has communications with them about their report.  I would like

47U8WINC

1    to have any records that there are.  I consider that part of

2    the administrative record.

3            THE COURT:  I suspect there is a transmittal letter.

4    Here is the file, review it and let us know.

5            MR. MARCUS:  It's already in the administrative

6    record, your Honor.

7            MR. RIEMER:  That may be.  There may be communications

8    in addition to that saying, Oh, we don't like this report,

9    change this.  They may not have given that to me.  I am

10   entitled to know whether that is there or not.

11           THE COURT:  Mr. Marcus, what I would ask you to do on

12   that, you do not need to turn it over, but you need to put it

13   together.  See if there is any correspondence between MetLife

14   and the consultants, transmittal letters or a smoking gun that

15   he thinks exists.  Find out what there is, put it together, and

16   then hold on to it.  If need be, if there is anything, I could

17   look at it in camera and make decisions.  Or you might report

18   that there is nothing other than the transmittals and you're

19   happy to turn over the transmittals and that's the end of the

20   issue.  But you can't know until you put it together.

21           You need to communicate with your client, whoever it

22   is in your client's office who has contact with the consulting

23   physicians.  I am sure you do this all the time.  All the time

24   they send out the files to a doctor for a report.  It's pretty

25   standard stuff.  Whatever they have, they have.  Tell them to

47U8WINC

1    put it together.  You may be so unconcerned that you say, it's

2    a bunch of transmittal letters, here it is.  Or you may say, we

3    have found things that we don't think he is entitled to, you

4    want to look at it, go ahead and look at it, but we don't think

5    he is entitled to it.  There is no point in ruling in advance

6    when there may be nothing to worry about.

7         MR. MARCUS:  I believe this material is already in the

8    administrative record.

9         THE COURT:  Saying it over again is not helpful.  Go

10   back to the client and just be sure.  Do a number of things.

11   Check whether these people are employed by anyone.  That's

12   number one.  Secondly, get a CV for each doctor.  That's

13   required.  Number three, find out what their practice is.  Is

14   all they do consulting for MetLife or are they in practice and

15   do this a percentage of time?  How long have they been

16   consulting for MetLife?  And then, finally, assure yourself

17   what the paper record of communications is, and we will see

18   what it is.  Maybe it's nothing but transmittals.

19         Now what is it, Mr. Riemer?

20         MR. RIEMER:  Each doctor probably has a file.

21         THE COURT:  On this case?

22         MR. RIEMER:  On this case.  I want a copy of that

23   file.  I think that should be part of the administrative

24   record.

25         THE COURT:  Go ahead.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

47U8WINC

1    MR. MARCUS:  I do not think he is entitled to get the

2    file of an outside physician.

3    THE COURT:  I think he is entitled to know what that

4    physician reviewed.  It may be in the report.

5    MR. MARCUS:  It's reflected in the report.

6    THE COURT:  It probably is.  I think you need to

7    double-check that again.  It's easy to find out for yourself

8    whether the doctor has a file on the case.  Take a look at it.

9    It may be nothing other than the material that he cited in the

10   report.  I reviewed the medical records I received.  I reviewed

11   the records from MetLife.

12   We need to make this go smoothly and quickly.  Instead

13   of fighting, do it.  Take a look at it.  See if these doctors

14   have a file that they keep on every case that is referred.

15   MR. MARCUS:  If I could just make one point?  These

16   questions are ultimately directed, I guess, as to whether

17   MetLife had a conflict of interest.  I don't see that exploring

18   the doctors' files is relevant to this.

19   THE COURT:  He thinks it's worse than that.  He thinks

20   if he is persistent enough, he will uncover evidence of real

21   bias.  Maybe somebody at MetLife said, I don't like this first

22   report, fix it and make it different.  That's the kind of

23   smoking gun he is talking about.  I am sure it has happened in

24   the history of the world, by the way.

25   MR. RIEMER:  They are going to say -- one of the

47U8WINC

1   doctor's names is Dr. Greenhood, and I know from other cases, I

2   have seen his name.

3           THE COURT:  You know it's Dr. Greenhood?

4           MR. RIEMER:  Yes.  I know he is around.  If they could

5   say, Well, we have hired Dr. Greenhood a hundred times, or

6   whatever it is, and if they could say, yes, 99 percent of the

7   time he said that the person was not disabled, it would show a

8   bias that this person is not 50/50.  This is somebody who

9   always says --

10          THE COURT:  It may be that the disability claims

11  aren't 50/50.  That's the problem with using statistics and

12  thinking that it is a science.  Let's say out of every 100

13  people he sees, 99 are not disabled.  For all I know, 99 are

14  not disabled.  It doesn't show bias because the figure could be

15  99 out of 100.

16          MR. MARCUS:  You have to look at the quality of the

17  reports that are presented in the administrative file on this

18  case.

19          THE COURT:  What is fair is to know whether their

20  entire workload is doing consults for MetLife.

21          I think you need to realize that it is a deferential

22  standard of review.

23          I have signed a referral today to the magistrate

24  judge.  I have given you most of the discovery you have asked

25  for.

47U8WINC

1      MR. RIEMER:  That was just the first item.  We have a

2  few others.

3      THE COURT:  I thought that was four items.

4      What else do you want, Mr. Riemer?

5      MR. RIEMER:  They have a claims manual that tells

6  their claims reviewers how to handle cases.  I wanted copies of

7  the portion of that manual dealing with claimants that have HIV

8  and depression.

9      THE COURT:  You don't know that already?  You say they

10  have a manual.  You have never seen it?

11      MR. RIEMER:  I have seen it in other cases.  I want it

12  in this case, and I want the sections that deal with these

13  illnesses.

14      THE COURT:  If you have seen it before --

15      MR. RIEMER:  I haven't seen it on these illnesses.

16      THE COURT:  You have seen this manual.  It's been

17  produced to you in other cases.

18      Apparently MetLife doesn't fight that request.  Go

19  find the sections dealing with HIV and depression so he knows

20  the standard applied.

21      MR. MARCUS:  We would like a confidentiality agreement

22  to prevent this from being --

23      THE COURT:  Fine.

24      MR. RIEMER:  I have no problem with that.

25      MR. MARCUS:  We would like the request tailored very

14

47U8WINC

1    narrowly.

2            THE COURT:  Fair enough.  Write it out.  Tailored

3    narrowly and negotiate a confidentiality agreement.

4            Next, Mr. Riemer.

5            MR. RIEMER:  I know that MetLife has a computer

6    system, and there are various screens on the computer system

7    showing information.  I would like a printout of every screen

8    in the computer system relating to my client so that I could

9    see what is in their system.

10           MR. MARCUS:  As I understand it, what he is referring

11   to is an old computer system.  It may or may not apply to this

12   particular claim.  I can look into that, and if it does, I will

13   supply it.

14           THE COURT:  OK.

15           MR. RIEMER:  There was an old computer system and that

16   was replaced with a newer one and there are still screen

17   prints.

18           MR. MARCUS:  Most likely it's extremely duplicative.

19           THE COURT:  You will look into it?

20           MR. MARCUS:  I will look into it.

21           THE COURT:  All right.

22           MR. RIEMER:  Also, from the claim file, I don't know

23   who made the decision to deny the claim, who at MetLife.

24           THE COURT:  It doesn't say?

25           MR. MARCUS:  The letters are signed.

47U8WINC

1          THE COURT:  The letters are signed.

2          MR. RIEMER:  It doesn't tell me who made the decision.

3          THE COURT:  I don't know what that means.  The letters

4     are signed.

5          MR. RIEMER:  The letter is a letter to my client.

6          THE COURT:  Signed by someone.

7          MR. RIEMER:  It doesn't tell me who made the decision.

8          THE COURT:  The person who signed it was not the

9     decision-maker?

10          MR. RIEMER:  I don't know if they were or not.

11          THE COURT:  Who was the decision-maker on this claim,

12     Mr. Marcus, do you know?

13          Was it a committee?  Who denies claims?  This is

14     pretty standard stuff.  Who denies claims?

15          MR. MARCUS:  There is a claim appeals specialist

16     usually who reviews the claim and makes a decision.

17          THE COURT:  Who was it here, do you know?

18          MR. MARCUS:  It's in the file.  I think the name was

19     Fern Conroy, I believe, if my memory serves me correctly.  She

20     may consult with other people, but I don't see what that

21     matters.

22          THE COURT:  He is entitled to know the decision-maker.

23     If that's the decision-maker, that's the decision-maker.

24          MR. RIEMER:  I would like to take her deposition.

25          MR. MARCUS:  I object, your Honor.  It's not

47U8WINC

1    necessary.  What does he hope to prove?  He has the

2    administrative file.  He has the decision.  He has the basis of

3    the decision.

4         MR. RIEMER:  Let me explain.  The reason why I want

5    her deposition is that this is the person at MetLife who

6    basically made sure that ERISA's requirements were satisfied

7    with regard to my client.  My client has a right for a full and

8    fair review and MetLife has a fiduciary duty to investigate the

9    claim, and I would just like to --

10        THE COURT:  You are not entitled to the

11   decision-maker's deposition.  That's my ruling.  You are

12   entitled to review the administrative record, and I am getting

13   for you much of the detail you have asked for.  But you are not

14   entitled to depose the decision-maker.

15        If you have case law to submit to the contrary, write

16   me a letter, a short letter.  My instinct says no way are you

17   entitled to depose decision-makers on this level of review on

18   an administrative record.  We do it all the time.  I don't

19   allow depositions.

20        MR. RIEMER:  Can you give me a date to do that?

21   Because there is a Second Circuit case that allowed it.

22        THE COURT:  Is it a controlling Second Circuit case or

23   did it say the judge did not abuse her discretion in permitting

24   the deposition?  There is a tremendous difference.  People have

25   an inability to read appellate law.  It is one thing to say

47U8WINC

1   it's not an abuse of discretion to have allowed it.  It is

2   another thing to require it.

3        I have grave doubts that the circuit requires the

4   deposition of a decision-maker in every review of an

5   administrative record.  That some judge didn't just abuse his

6   or her discretion, that's nice.  I am sure I would rule the

7   same way.  I am not allowing the deposition.  If it's that

8   simple, if you know the case, send it in this afternoon.  Here

9   is the citation I mentioned before.

10       MR. RIEMER:  I don't want to misrepresent to you.  It

11  doesn't say that.

12       THE COURT:  Just say, Here is the citation I mentioned

13  in court.

14       MR. RIEMER:  Obviously it's in your discretion.

15       THE COURT:  That's what I thought.  Just send in the

16  citation.  I am happy to read it.

17       MR. RIEMER:  OK.

18       THE COURT:  Anything further?

19       Why don't we start talking about time frame for this

20  and then the briefing of the motion.  If you can't settle this

21  case, then you need to brief the motion, the review, so that

22  you can take your case, if you think you should, to the

23  circuit.  If you think the decision on the level of review is

24  erroneous, you can't get there until you finalize the judgment

25  here.

47U8WINC

1        MR. RIEMER:  I understand that.

2        THE COURT:  Let's do it.  Let's say this discovery

3   that you're seeking might take six weeks or so?

4        MR. RIEMER:  He has to tell me.

5        THE COURT:  That's the most.  I know it's summer.

6   It's hard to get anything done.  I would surely think by

7   mid-September it's all done.

8        Assuming it's done, you're the movant on the final

9   motion.  You want to say that the decision is erroneous and it

10  should be set aside.  So you're the movant.  When do you want

11  to serve your papers, assuming you have all this information by

12  mid-September?

13       MR. RIEMER:  By October 15?  I don't have a calendar.

14       THE COURT:  That's fine.  That's a Friday.

15       How long would you like to respond, Mr. Marcus?

16       MR. MARCUS:  Of course I would like to make a motion.

17       THE COURT:  Cross-motion?

18       MR. MARCUS:  For summary judgment as well.

19       THE COURT:  All right.  You can do it in response.

20  You respond and say, and by the way, we are moving on the same

21  record.

22       MR. MARCUS:  By November 15.

23       THE COURT:  And reply?

24       MR. RIEMER:  If I could have two weeks after that?

25       THE COURT:  Right.  That would take us to November 29,

47U8WINC

1    and then the case will be fully submitted, as far as I am

2    concerned.

3         All right.  You can go ahead and send me that case.  I

4    am happy to look at it.

5         I urge you to try to consider whether this particular

6    case could be settled.

7         OK.  Thank you.

8         (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25