UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04-11408 DPW

_____
                                    )
VICTORIA C. PATTISON,               )
            Plaintiff,              )
                                    )
v.                                  )
                                    )
THE HERTZ CORPORATION WELFARE )
PLAN and METROPOLITAN LIFE          )
INSURANCE COMPANY,                  )
            Defendants.             )
_____)

**OPPOSITION TO PLAINTIFF'S MOTION FOR LIMITED PRE-TRIAL DISCOVERY
AND TO CLARIFY THE PARAMETERS OF THE JUDICIAL RECORD**

Defendant Metropolitan Life Insurance Company ("MetLife") opposes the plaintiff's motion for pre-trial discovery and to clarify the parameters of the judicial record. MetLife has produced the administrative record that was the basis for its decision to terminate the plaintiff's benefits. No further discovery or expansion of the judicial record is required to resolve the dispute. The requested discovery will prohibit an efficient and expeditious of the case, is irrelevant to the sole issue in this case, and is overly burdensome. Accordingly, the plaintiff's motion should be denied.

1

## SUMMARY OF FACTS [1]

The plaintiff, Victoria C. Pattison, ("Ms. Pattison") was hired in August, 1980 as a Clerk at The Hertz Corporation ("Hertz"). Ms. Pattison was a participant in The Hertz Corporation Welfare Plan (the "Plan"), an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"). The Plan provides certain long term disability benefits to eligible participants, and was funded by Metropolitan Life Insurance Company ("MetLife") under a group insurance policy issued to Hertz. MetLife was the Claims Administrator of the Plan.

The Certificate of Insurance for Long Term Disability issued by MetLife to Hertz describes the benefits under the Plan. It provides specifically that "MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract." It further provides:

**DISCRETIONARY AUTHORITY OF PLAN ADMINISTRATOR
AND OTHER PLAN FIDUCIARIES**

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious. (HZ0035)

Similarly, The Hertz Custom Benefit Program Summary Plan Description, which included a discussion of the long term disability plan, provided:

> The Plan Administrator supervises the operation of the Program and has the authority to exercise discretion where necessary or appropriate in its administration and the interpretation of Program provisions, and may delegate some responsibility to

---

[1] For purposes of this Opposition only, MetLife adopts certain allegations contained in Ms. Pattison's complaint. In addition, the fact section includes facts that can be discerned from the documents that have been filed in this action as the Administrative Record for Judicial Review.

subcommittees, employees, third party administrators or insurance companies. . . . Claim appeals under the . . . plans . . . are handled by the appropriate insurance company. The interpretations and constructions of the Plan Administrator and its delegates are final, binding and conclusive as to all interested parties. (HZ0205)

In or about September 1997, Ms. Pattison was diagnosed with multiple sclerosis. She continued to work at Hertz until November, 2000, when Hertz received a note from her doctor which recommended that she be placed on long term disability leave. On November 13, 2000, Hertz placed Ms. Pattison on short term disability leave, and submitted a claim to MetLife for long term disability benefits on her behalf. Ms. Pattison's long term disability benefits were approved by MetLife on April 6, 2001, and began on May 12, 2001.

On or about March 28, 2002, Ms. Pattison's long term disability benefits were withdrawn by MetLife. The withdrawal was based upon a determination that Ms. Pattison no longer met the definition of "total disability from any occupation as defined by the Hertz Corporation long-term plan." The file had been referred to a board-certified independent medical physician on January 15, 2002. The review was conducted by Amy Hopkins, M.D., and her report was dated February 11, 2002. Among other things, it stated that "Most people with MS continue to work for many years, and it is not clear why [Ms. Pattison] cannot work at this time in her own sedentary occupation." It also stated "no physical impairment was documented which would preclude" Ms. Pattison from returning to work, full time in her own occupation." The Hopkins review was forwarded by MetLife on February 12, 2002 to Paul Blachman, M.D., Ms. Pattison's physician. MetLife requested a response with any additional comments by February 26, 2002. Only after Ms. Pattison's claim had been withdrawn, did Dr. Blachman respond to MetLife on April 5, 2002.

On or about August 1, 2002, Ms. Pattison appealed her termination of long term disability benefits ("Appeal"). MetLife reviewed additional information that Ms. Pattison submitted with her appeal. In addition, MetLife obtained and reviewed an independent physician consultant report dated September 12, 2002 by Robert C. Porter, M.D. On October 16, 2002, MetLife upheld its original determination that Ms. Pattison no longer met the definition of disability under the Plan.

On June 13, 2003, Ms. Pattison's attorney sent an overview of her claim for benefits to MetLife seeking another review of her claim ("Second Appeal"). On June 24, 2003, MetLife responded to this request for second review, and upheld its original determination. MetLife stated that it had reviewed the claim and "found no medical evidence to substantiate" Ms. Pattison meeting the definition of disability according to the Plan.

On July 15, 2003, Ms. Pattison's attorney sent a request for consideration of Ms. Pattison's circumstances to the President and Chief Executive of the Hertz Corporation and the Chairman of MetLife. On August 15, 2003, MetLife notified Ms. Pattison's attorney that it would conduct one further review ("Third Appeal"). MetLife requested that Ms. Pattison undergo an independent medical examination in connection with the Third Appeal of the claim decision, which is permitted under the Plan. Ms. Pattison would not agree to an independent medical examination in connection with the Third Appeal. MetLife reviewed the additional documents and correspondence that Ms. Pattison submitted. In addition, it obtained an independent physician consultant report from Michael S. Miller, Ph.D., M.D., who is a neurologist. Following this Third Appeal, MetLife upheld its prior determination to terminate benefits on November 10, 2003.

4

The plaintiff filed this complaint for benefits under the Plan against MetLife, The Hertz Corporation Welfare Plan and The Hertz Corporation alleging violation of ERISA on June 21, 2004. The Hertz Corporation was dismissed by Stipulation of Dismissal on October 6, 2004.

**ARGUMENT**

**I. PERMITTING DISCOVERY IN THIS CASE IS INCONSISTENT WITH ERISA'S GOAL OF EFFICIENT ADMINISTRATION OF CASES INVOLVING BENEFITS CLAIMS.**

The First Circuit has repeatedly recognized that one of the objectives of ERISA is to resolve disputes over claimed benefits efficiently and expeditiously.  Liston v. Unum Corporation Officer Severance Plan, et al, 330 F. 3d 19, 26 (1st Cir. 2003); Recupero v. New England Telephone and Telegraph Company,  et al., 118 F. 3d 820 (1st Cir. 1997); Lane v. Director of Employee Benefits, Gannett Company, Inc., 253 F. Supp. 2d 57, 63 (D. Mass 2003) (court is to limit its review to the record before the plan administrator to "ensure expeditious judicial review of ERISA benefit decisions" and keep district courts from becoming "substitute plan administrators") The plaintiff's generalized request to include more information in the record to be considered by the Court in evaluating MetLife's decision will delay resolution of the case.  The administrative record that was reviewed by MetLife is complete, and has been filed with the Court. Plaintiff, who submitted two appeals more than the Plan permits, and was represented by counsel on both additional appeals, had ample opportunity to supplement the administrative record and did so. The administrative record is already quite large. No further discovery is necessary for this court to determine whether MetLife's actions were arbitrary or capricious.

In Liston, the trial court denied the plaintiff's request for discovery into how others were treated under the officer's severance plan and its change in control provisions. The First Circuit

5

held that there was no abuse of discretion in denying plaintiff's request for discovery. It considered whether the discovery was warranted when the central issue was what the plan promised to the plaintiff, and whether the plan delivered. In this context, the Court recognized that the search requested by the plaintiff would be burdensome, and if allowed, "[e]very administrative denial would be an occasion for a vast and expensive inquiry into what judges sometimes call 'collateral issues.'" Id., at 26, citations omitted. The Court further reasoned: "Mandating discovery in such a situation would be at odds with the concerns about efficient administration that underlie the ERISA statue itself." Id.

A complete and accurate record of what was considered by MetLife in making its decisions about plaintiff's claims for benefits has been produced, and filed with the court. Permitting the plaintiff to propound requests for production or further interrogatories based upon a generalized request for additional information will delay resolution of the case. The scheduling order requires motions for summary judgment to be filed by April 25, 2005. Permitting the plaintiff to engage in pretrial discovery will delay the determination of the motions, and add unnecessary expense to the case.

## II. PLAINTIFF'S DISCOVERY SEEKS IRRELEVANT INFORMATION BECAUSE THE COURT'S DEFERENTIAL REVIEW OF METLIFE'S DECISION WILL BE BASED UPON THE EVIDENTIARY RECORD PRESENTED TO THE DECISION MAKER.

Federal Rule of Civil Procedure 26 provides that plaintiff is only entitled to discovery "regarding any matter, not privileged, that is relevant to *the claim or defense of any party*." (Emphasis added). The Plan vests discretionary authority in MetLife to determine eligibility for benefits or to construe its terms. The sole issue in this case is whether MetLife's termination of plaintiff's long term disability benefits was arbitrary and capricious. The arbitrary and

6

capricious standard of review strictly limits the grounds upon which an administrator's discretionary determination can be disturbed.  A reviewing court should not "substitute its judgment for that of the [decision-maker]."  Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998) (brackets in original), quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  As the First Circuit emphasized in Jestings v. New England Telephone & Telegraph Co., 757 F.2d 8 (1st Cir. 1985), it is for plan fiduciaries, and not courts, to choose between reasonable alternatives involving plan administration.  Id. at 9.  A reviewing court, therefore, should not determine which side it believes is right.  Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).  Instead, the court should give administrators "considerable leeway to interpret and to apply" plan provisions, "setting aside those ... decisions only if they are arbitrary, capricious, or an abuse of discretion."  Diaz v. Seafarers International Union, 13 F.3d 454, 456 (1st Cir. 1994).

When an ERISA determination is reviewed for arbitrariness, "there is a strong presumption that the required deferential review of a plan administrator's benefits decision should be limited to the evidentiary record presented to the administrator."  Lopes v. Metropolitan Life Insurance Company, 332 F. 3d 1, 5 (1st Cir. 2003) (rejecting plaintiff's attempts to supplement the administrative record with additional medical evidence). Lane v. Director of Employee Benefits, Gannett Co., Inc., 253 F. Supp. 2d 57, 63 (D. Mass. 2003) MetLife has produced the administrative record upon which it made its determination that plaintiff was not disabled within the meaning of the Plan, and considered her several requests for review of that decision.  The Court can review MetLife's decision for arbitrariness based upon this administrative record.

7

As suggested by plaintiff, the trial court has the authority to make factual findings about what is or is not properly a part of the record for judicial review. <u>Recupero v. New England Telephone and Telegraph Company, et. al.</u>, 118 F. 3d 820, 833 (1st Cir. 1997). The First Circuit in <u>Recupero</u>, however, specifically did not decide whether the trial court reviewing a benefits determination must restrict itself to the "'record' as considered by the decision maker who interpreted the employee benefits plan." <u>Id.</u>, at 833. In this case, the issue to be decided is whether MetLife's determination that the plaintiff was not totally disabled within the meaning of the Plan was arbitrary. Accordingly, it is appropriate for the Court to limit its review to the record presented to MetLife.

### III. THE PLAINTIFF'S DISCOVERY REQUESTS ARE NOT RELEVANT TO THE ISSUE IN THE CASE.

Plaintiff broadly seeks any internal guidelines and training materials regarding the "interpretation and application" of the Plan, Summary Plan Description and insurance policy issued to Hertz ("Internal Guidelines"). Although no formal document request has been propounded by the plaintiff, MetLife has offered to produce any internal claim guideline for the relevant time period that specifically addresses multiple sclerosis, provided an appropriate confidentiality stipulation is in place. A generalized request for all Internal Guidelines, however, does not seek relevant evidence when the issue to be reviewed is whether the determination that the plaintiff was not totally disabled was arbitrary. In addition, plaintiff seeks discovery regarding an alleged conflict of interest with the use of Amy Hopkins, M.D., and an entity named "NMR."[2] Similarly, the plaintiff's broad request for information about particular physicians used by MetLife does not seek information relevant to the determination.

---

[2] As set out more fully in Defendant's Responses to Plaintiff's First Set of Interrogatories, MetLife has numerous objections to the "conflict of interest" interrogatories. One relevance objection is because the plaintiff's disability

8

Unlike Glista v. UNUM Life Insurance Co. of America, 378 F.3d 113 (1st Cir. 2004), the issue in this case does not require the interpretation of a specific clause in the plaintiff's disability plan. Contrary to the facts presented in this case, the plan administrator in Glista found that the plaintiff was disabled. Id. at 115. The plan administrator, however, denied Glista's claim on the ground that his disability was a "pre-existing condition" and excluded from coverage under the plan. Id. Glista claimed that the denial was erroneous and he sought to introduce the plan administrator's internal guidelines and training materials. Id. at 120-21. The issue in Glista was whether the plan administrator's adverse interpretation of the "pre-existing condition" clauses was consistent with the plan administrator's internal documents interpreting those same provisions. Id. at 124. The First Circuit concluded that the plan administrator's internal documents were admissible because they were relevant to the interpretative issue in that case. Id. at 124-25. The First Circuit, however, declined to adopt a "hard-and-fast rule" for deciding the admissibility and relevance of a plan administrator's internal documents. Id. at 115-16.

Here, MetLife's internal guidelines and training materials have no bearing on the issue in dispute because it does not involve the interpretation of any particular clause in the Plan. Furthermore, the requested discovery has no bearing on whether MetLife's final decision to terminate plaintiff's benefits was arbitrary and capricious. MetLife terminated plaintiff's benefits because it found no medical evidence to substantiate plaintiff's disability according to the definition in the Plan. Plaintiff has failed to articulate how MetLife's internal guidelines and training materials are relevant to the simple issue at hand: was it arbitrary and capricious for MetLife to terminate benefits on March 28, 2002, when it determined that plaintiff was no longer

---

claim was not referred to NMR. MetLife incorporates its responses and objections to the "conflict of interest" interrogatories herein.

disabled within the meaning of the Plan? As there is no interpretative issue regarding a plan provision, and as MetLife's internal documents are irrelevant to the sole issue in this case, discovery of MetLife's internal documents should be denied.

Similarly, the amount of work that certain physicians accomplish for MetLife is irrelevant to the issue at hand. Indeed, if some physicians do a tremendous amount of work for MetLife it may be indicative of the good quality of their work, rather than any alleged conflict of interest. For example, MetLife may often use certain doctors for independent physician reviews because MetLife is aware of their qualifications and familiar with their good work. If MetLife rarely used a particular physician, it might be because initial work conducted by the physician had been suspect. It does not necessarily follow that volume of work has any bearing on whether a report is sufficient. All reviews conducted by physicians of the plaintiff's claim have been produced. Any reports prepared by physicians that were considered relative to plaintiff's claim for benefits have been produced. Plaintiff is capable of making arguments about these reports without any additional discovery into the volume of work conducted by a physician for MetLife.

Further, because the physicians are not the decision makers in the case, it is not their decisions or their conflict of interest that is relevant. Their reports will be considered by the Court to determine whether MetLife's decisions were reasonable, but discovery about the physician's alleged conflict of interest is not relevant. <u>Abromitis v. Continental Casualty Company/CNA Insurance Companies</u>, 261 F. Supp. 2d 388 (W.D.N.C. 2003) (claimant could not compel discovery about vocational expert as expert did not make the decision being reviewed). The Court in <u>Abromitis</u> denied plaintiff's motion to compel discovery, noting that discovery generally is not available where, as here, the Court's review is for abuse of discretion. The Court also recognized that to permit such discovery would increase both the time and

10

expense involved in reviewing ERISA benefits decisions. Plaintiff's generalized request for discovery outside of the administrative record considered by MetLife should be denied, both because it is irrelevant and because responding to such requests when propounded will add unnecessary expense and burden to the litigation.

## CONCLUSION

The defendant MetLife respectfully requests that the Plaintiff's Motion for Limited Pre-Trial Discovery and to Clarify the Parameters of the Judicial Record be denied.

                                     METROPOLITAN LIFE INSURANCE
                                     COMPANY
                                     By its attorneys,

                                   /s/ James F. Kavanaugh, Jr.
                                   James F. Kavanaugh, Jr. BBO# 262360
                                   Constance M. McGrane BBO# 546745
                                     CONN KAVANAUGH ROSENTHAL PEISCH
                                      &amp; FORD, LLP
                                   Ten Post Office Square
                                   Boston, MA 02109
                                   617-482-8200

Dated: March 28, 2005

223022.1